O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| LINDA CLARK, | Case No. EDCV 06-00446-MLG |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | |
| Defendant. | |

**I.   Factual and Procedural Background**

This is an action for judicial review of the Commissioner's final decision denying Plaintiff's application for Social Security Disability benefits.

Plaintiff Linda Clark was born on June 21, 1957, and has an eleventh-grade education. (Administrative Record ("AR") 57, 69.) She has worked as a driver for various organizations, as well as a cashier and deli worker. (AR 69.) Plaintiff's driving positions often included additional duties such as lifting boxes and adjusting and lifting

wheelchairs. Over time, Plaintiff developed carpal tunnel syndrome and pain in her upper extremities which required multiple surgeries.

On June 5, 2003, Plaintiff filed an application for Social Security Disability Insurance Benefits, claiming an onset disability date of January 12, 2000. (AR 57, 65.)[1] The Commissioner denied Plaintiff's application initially and upon reconsideration. (AR 35-38, 41-44.) Plaintiff timely filed a Request for Hearing, and a hearing was held on November 16, 2004, before Administrative Law Judge ("ALJ") Frederick J. Graf. (AR 13, 20.) The ALJ was required to determine whether, since January 12, 2000, Plaintiff has been disabled for a period that has lasted or can be expected to last for a period of at least twelve months. (Id.)

In a decision issued December 13, 2004, the ALJ found that Plaintiff was not disabled during the relevant time period. (AR 20.) The ALJ made specific findings that Plaintiff is severely impaired, within the meaning of the Social Security Act, due to upper extremity and back pain, and status post multiple bilateral carpal tunnel release and ulnar release surgeries; that Plaintiff's impairments do not meet or medically equal any of the listed impairments; that Plaintiff retains the residual functional capacity ("RFC") to perform the full range of light work; and that under the Medical-Vocational Guidelines Plaintiff is not disabled. (AR 19.)

Plaintiff timely filed a Request for Review of the ALJ's decision. The Appeals Council denied review on April 22, 2006. (AR 4-6.) Plaintiff filed the instant action, claiming that the ALJ erred by: 1) failing to

---

[1] Plaintiff had filed an earlier application for benefits on September 11, 1998. The claim was denied at the initial level of review on January 7, 1999 and not pursued further. (AR 13.)

properly consider the opinions of multiple physicians in determining Plaintiff's RFC; and 2) failing to properly consider Plaintiff's subjective complaints of pain. (Jt. Stip. 3.)

**II.  Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's findings and decision must be upheld if it is "supported by 'substantial evidence' and if the proper legal standard was applied." *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006). It is more than a scintilla, but less than a preponderance. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute its judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

**III. Medical Evidence of Residual Functional Capacity**

A claimant's RFC is what she is capable of doing despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1); *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "RFC is an assessment of an individual's ability to do sustained work-related physical and

mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996).[2] A RFC assessment is ultimately an administrative finding reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(2). However, an RFC determination is based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. Id.

The ALJ concluded that Plaintiff retains the RFC to perform light work. Specifically, the ALJ found that Plaintiff:

> retains the ability to lift and carry 20 pounds occasionally and 10 pounds frequently. She is able to sit, stand, and/or walk for about six hours in an 8-hour day with normal breaks. However, her ability to handle and finger (gross and fine manipulation) including forceful gripping, twisting, picking and pinching, is limited to a frequent basis.

(AR 19.)

In reaching this conclusion, the ALJ accepted the specific opinions of the following three physicians:

1)  Dr. James D. Matiko, an orthopedic surgeon, examined Plaintiff on October 14, 1999. In a written report, Dr. Matiko reviewed Plaintiff's medical history and the findings from the medical exam, and opined that Plaintiff is precluded from repetitive forceful gripping and

---

[2] "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and policy....Although SSRs are not published in the federal register and do not have the force of law, [the Ninth Circuit] nevertheless give[s] deference to the Secretary's interpretation of its regulations." *Bunnell v. Sullivan*, 947 F.2d 341, 346 n.3 (9th Cir. 1991) (en banc).

|   |   |   |
|---|---|---|
| | | grasping, prolonged keyboard activity, prolonged writing, and repetitive pushing and pulling bilaterally. (AR 252-60.) |
| | 2) | Dr. Prabhu Dhalla, an orthopedic surgeon, treated Plaintiff for an extended period of time and performed multiple surgeries. On May 10, 2002, Dr. Dhalla issued a report stating that Plaintiff should be restricted from heavy lifting or heavy pushing and pulling, and also from performing repetitive gripping, grasping or fingering with both hands. (AR 274-79.) On November 5, 2002, in reference to a specific job opening available to Plaintiff, Dr. Dhalla issued another report stating that Plaintiff was capable of carrying 10 pounds frequently and 10 to 20 pounds occasionally, simple grasping occasionally, firm grasping occasionally, and fine manipulation and movements of the wrist with both hands occasionally. (AR 269.) |
| | 3) | Dr. Thomas J. Sabourin, an orthopedic surgeon, examined Plaintiff. In report written on August 4, 2003, Dr. Sabourin reviewed Plaintiff's medical history and the findings from the medical exam, and opined that Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally. (AR 322-26.) |

Plaintiff contends that the ALJ erred in determining Plaintiff's RFC in three ways. First, Plaintiff argues that the ALJ's RFC determination did not accurately reflect the medical opinions of Drs. Matiko and Dhalla. Second, Plaintiff argues that the ALJ improperly rejected the opinions of two other physicians regarding Plaintiff's

5

physical limitations. Third, Plaintiff maintains that it was legal error for the ALJ to choose not to obtain the testimony of a medical expert. (Jt. Stip. 3-6.)

### A. Discussion

It is the responsibility of the ALJ to resolve conflicts and ambiguities in the medical record and determine credibility. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1989). Thus, the ALJ determines which medical opinions should be given the most weight in light of the general rule in this circuit that, among the three types of physicians—(1) treating physicians, i.e., those who treat the claimant; (2) examining physicians, i.e., those who examine but do not treat; and (3) non-examining physicians, i.e., those who neither examine nor treat—the most weight should be given to the opinion of a treating source. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). An ALJ should accordingly give deference to a treating medical source's opinion as to the nature and severity of an impairment if it is well supported and not inconsistent with other substantial evidence. SSR 96-2p, 1996 WL 374188, at *1 (S.S.A. July 2, 1996). This is "[b]ecause treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual...." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

### B. Analysis

#### 1. Medical Opinions of Drs. Matiko and Dhalla

Although the ALJ explicitly embraced the medical opinions of Drs. Matiko and Dhalla, Plaintiff in essence argues that the ALJ erred by failing to actually incorporate their opinions into his RFC finding. Plaintiff contends that the ALJ failed to account for Dr. Matiko's

opinion that Plaintiff is "precluded from repetitive forceful gripping or grasping, prolonged keyboard activity, and prolonged writing. She is also precluded from repetitive pushing and pulling bilaterally." (Jt. Stip. 4.)

Plaintiff also contends that the ALJ failed to account for Dr. Dhalla's statement, "The patient would also be precluded from activities that require repetitive elbow flexion and extension." (AR 278.) Plaintiff argues that these portions of the medical opinions lead to a more limited upper extremity RFC.

Contrary to Plaintiff's assertion, the ALJ's RFC determination is consistent with the specific opinions cited by Plaintiff. The ALJ repeated the same statements cited by Plaintiff, nearly verbatim, before concluding that Plaintiff can lift 10 pounds frequently and that the use of her hands is limited to a frequent basis. The ALJ's determination that Plaintiff is capable of *frequent* use of her hands is not inconsistent with Dr. Matiko's opinion that Plaintiff is precluded from *repetitive* use of her hands. Repetitive use of the hands connotes completion of the same task, again and again, requiring the same type of motion, while frequent use of the hands requires the completion of a variety of tasks at short intervals. Repetitive movements would more severely strain the wrists and hands than frequent movements.

And while Dr. Dhalla opined that Plaintiff should not engage in "repetitive elbow flexion and extension," she may still have the physical capacity to lift 10 pounds frequently and 20 pounds occasionally. This conclusion is supported by a report issued by Dr. Dhalla a few months later, in which she stated that Plaintiff is capable of performing at a job that would require carrying 10 pounds frequently and 10 to 20 pounds occasionally. Plaintiff has not even suggested why

a restriction on Plaintiff's repetitive use of her elbow would restrict her ability to lift beyond the RFC determined by the ALJ.

The ALJ did not improperly reject the opinions of Drs. Matiko and Dhalla. The ALJ accepted their opinions, and made an RFC determination accordingly.

**2.   Medical Opinions of Drs. Tiedeman and Wang**

Plaintiff maintains that the ALJ improperly disregarded the medical opinions of two other physicians. Dr. G.E. Tiedeman, a state agency reviewing physician, completed a Residual Functional Capacity Assessment on January 4, 1999, in which he stated that Plaintiff is limited to occasional handling and fingering with the left hand, and is "capable of one-armed light work." (AR 212, 215.) Dr. Weijia Wang, a neurologist who examined Plaintiff on November 21, 1998, stated that Plaintiff "should avoid frequent carrying and lifting with both hands. She should avoid carrying heavy objects and could probably carry about 5-10 pounds but should avoid frequent carrying and handling until these problems are addressed and resolved."

The ALJ makes no mention of the findings or opinions of either physician, but he is not obligated to. The ALJ need not address all evidence in the administrative record, but only significant, probative evidence. *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995); *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984). In light of Plaintiff's treatment history, neither opinion was significant or probative.

Both reports were issued prior to the alleged disability onset date of January 12, 2000. As the ALJ noted, Plaintiff had three repeat surgeries after the onset date: repeat left elbow surgery in September 2000, repeat right elbow surgery in February 2001, and repeat right

carpal tunnel release in December 2001. (AR 16.) With the intervening surgeries and other medical treatment that Plaintiff received, the opinions of Drs. Tiedeman and Wang no longer reliably describe Plaintiff's condition.

The ALJ instead relied on the findings and opinions of physicians who worked more closely with Plaintiff during the relevant time period. The ALJ summarized the findings of Drs. Bryan Leung and John Gonzalez, who treated Plaintiff prior to the alleged onset date, then reviewed the reports of at least five physicians who treated or examined Plaintiff after the onset date, explaining how Plaintiff's condition progressed over the relevant time period. The ALJ properly discussed the medical documentation of every physician during the relevant this time, and based his decision on the evidence. The ALJ was not additionally required to specifically discuss every outdated report and explain why they were no longer relevant.

The ALJ did not err by disregarding the opinions of Drs. Tiedeman and Wang cited by Plaintiff.

### 3. Medical Expert Testimony

Plaintiff argues that the ALJ also erred by failing to obtain medical expert testimony concerning Plaintiff's upper extremity limitations. (Jt. Stip. 6.) The regulations give an ALJ discretion to "ask for and consider opinions from medical experts on the nature and severity" of a claimant's impairments. 20 C.F.R. § 404.1527(f)(2)(iii). The regulations do not require the ALJ to obtain expert medical testimony under any specified circumstance, nor has Plaintiff cited any authority in support of this proposition. The ALJ did not err by determining Plaintiff's RFC based on the medical record, without the additional testimony of a medical expert.

### IV. Plaintiff's Subjective Complaints of Pain

In her application for benefits, Plaintiff complained of pain and numbness in her hands and arms. (AR 65, 74.) Plaintiff continued to complain of pain in her hands and arms, as well as her back, at multiple medical examinations. (E.g., AR 90-93.) Plaintiff also testified at the administrative hearing that she is unable to lift a gallon of milk with one hand due to pain, and that the pain she experiences in her shoulders, arms, and hands is so severe that she is not able to sit or stand for an extended period of time. (AR 390-95.)

The ALJ found that, although Plaintiff has a medically determinable impairment that could reasonably cause pain, the Plaintiff's representation of the intensity, persistence, and limiting effect of such pain was not credible. (AR 16.) Plaintiff claims that the ALJ erred by failing to properly discredit her complaints.

#### A. Discussion

"[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell*, 947 F.2d at 345. To the extent that an individual's claims of functional limitations and restrictions due to the alleged pain are reasonably consistent with the objective medical evidence and other evidence in the case, the claimant's allegations will be credited. SSR 96-7p, 1996 WL 374186, at * 2 (S.S.A. July 2, 1996) (explaining 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for discrediting a claimant's complaints. *Robbins*, 466 F.3d at 883.

Social Security Regulation 96-7p identifies the types of evidence that may be used, in addition to the objective medical evidence, to assess a claimant's credibility.[3] For example, an ALJ may discredit a claimant's testimony if she engages in daily activities that are inconsistent with her allegations. *Bunnell*, 947 F.2d at 346. "Another relevant factor may be 'unexplained or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.'" *Id.* (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). The ALJ may also use "ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (internal quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick*, 157 F.3d at 722 (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)).

//

---

[3] SSR 96-7p lists seven types of evidence:
1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at * 3.

**B.   Analysis**

As the ALJ acknowledged, Plaintiff satisfied the initial requirement announced in *Bunnell* by presenting objective medical evidence of an underlying impairment. The ALJ was therefore required to provide clear and convincing reasons for discrediting Plaintiff's complaints.

The ALJ did not err in finding that Plaintiff's complaints were not credible. The ALJ offered five bases for his conclusion, all of which are legitimate: 1) the alleged pain was disproportionate to the clinical and diagnostic findings, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citing 20 C.F.R. § 404.1529(c)(2)); 2) Plaintiff's complaints were not always consistent, *Tonapetyan*, 242 F.3d at 1148; 3) Plaintiff did not always take her pain medication as prescribed, *Bunnell*, 947 F.2d at 346; 4) there were long gaps of time between Plaintiff's visits to the doctor to receive treatment for the pain, *Bunnell*, 947 F.2d at 346; and 5) the record reveals some weight loss but no diffuse muscle atrophy or muscle wasting, which are common side effects of chronic pain, *Rollins*, 261 F.3d at 857. (AR 16-17.)

Any one of these reasons, taken in isolation, may provide a weak rationale for discrediting Plaintiff. But taken together, they provide a proper basis for the ALJ's decision for rejecting Plaintiff's testimony. "[T]he ALJ's interpretation of her testimony may not be the only reasonable one. But it is still a reasonable interpretation and is supported by substantial evidence; thus, it is not [the Court's] role to

second-guess it." *Rollins*, 261 F.3d at 857.

### V.  Conclusion

For the reasons stated above, it is **ORDERED** that the decision of the Commissioner be affirmed and this case dismissed with prejudice.

DATED: February 26, 2007

_____
MARC L. GOLDMAN
United States Magistrate Judge